IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) ) ) | COMPLAINT |
| BERRY GLOBAL GROUP, INC., | ) ) | JURY DEMAND |
| Defendant. | | |

## NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., as amended by the ADA Amendments Act of 2008 (ADA) to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Jasmine Locke who was harmed by such practices. As alleged with greater particularity below, Defendant, Berry Global Group, Inc. (Defendant Employer), violated the ADA by discharging Locke, a qualified individual with a disability, because of her disability (depression), record of disability, and perceived disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5(f)(1) and (3).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission (the Commission) is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706 (f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Employer, Berry Global Group Inc., an Indiana corporation, has been continuously doing business in the State of Tennessee and the City of Nashville and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than 30 days before the institution of this lawsuit, Jasmine Locke filed a charge of discrimination with the Commission alleging violations of Title I of the ADA by Defendant Employer.

7. On May 31, 2023, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe Defendant Employer violated the ADA and invited Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission engaged with Defendant Employer to provide Defendant with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission could not secure from Defendant Employer a conciliation agreement acceptable to the Commission.

10. On July 20, 2023, the Commission issued to Defendant Employer a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

**DISCHARGE BECAUSE OF DISABILITY**

12. Since at least January 21, 2022, Defendant Employer has engaged in unlawful employment practices in violation of Section 102(a), of Title I of the ADA, 42 U.S.C. §12112(a).

13. These unlawful employment practices include Defendant Employer discriminating against Jasmine Locke by discharging her because of her disability (major depressive disorder), record of disability, and perceived disability.

14. Locke has an impairment, major depressive disorder.

15. Locke was diagnosed with depression when she was around sixteen years old.

16. Locke's depression can become so severe that she cannot rise from her bed some days.

17. Locke's depression causes her to lose sleep and neglect daily activities such as eating, bathing, childcare, and working.

18. Locke's depression causes her to have panic attacks and manic episodes that sometimes require admission to a psychiatric care facility.

19. Locke's major depressive disorder substantially limits major life activities, including her brain function – the ability to care for herself, concentrating, thinking, communicating, interacting with others, and working.

3

20. Defendant Employer, a Fortune 500 company, markets plastic packaging products.

21. Locke applied for employment with Defendant Employer around 2013.

22. Locke informed Defendant Employer of her depression by listing her condition on her job application.

23. In February 2013, Defendant Employer hired Locke as a Production Operator at its Nashville plant located at 70 Old Hickory Blvd., Old Hickory, Tennessee 37138.

24. Locke worked as an exemplary employee for Defendant Employer, receiving several promotions throughout her employment.

25. Around July 11, 2021, Defendant Employer promoted Locke to Expert Converting Operator Nights WE (weekends), where she led her team on over nights shifts.

26. Locke is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

27. While working her shift for Defendant Employer in March 2019, Locke suffered a panic attack.

28. An ambulance transported Locke to a psychiatric care facility where she remained overnight for treatment.

29. Because of her March 2019 panic attack, Defendant Employer required Locke to complete Family and Medical Leave Act (FMLA) paperwork.

30. Around March 11, 2019, Locke submitted her FMLA leave request directly to Defendant Employer's Multi-Site Human Resources Manager, Susan Coffey.

31. The Medical Certification Form stated that Locke will need "follow up treatments appointments or work-part time or on a reduced schedule because of the employee's medical condition."

32. The Medical Certification Form stated the condition will cause "episodic flare-ups periodically preventing the employee from performing his/her job functions"; and it is "medically necessary for the employee to be absent from work during the flare-ups" because "periodic increase in depressed symptoms could result in inability to perform job functions."

33. At all relevant times, Defendant Employer knew about Locke's disability.

34. Supervisors and management officials knew of her mental health condition.

35. Locke kept them informed of her mental health condition in case of a flare up.

36. Locke also informed the Coffey about her mental health condition.

37. On January 14, 2022, Locke contacted her supervisor, Brent Ellis, and requested personal time off (PTO) for her work shifts from January 14 through 16, 2022.

38. Ellis approved Locke's PTO for the three days.

39. The next week, on January 21, 2022, Locke left a voicemail on Coffey's cellphone requesting Coffey fax her paperwork for FMLA leave.

40. Coffey returned Locke's call that afternoon and asked Locke if the paperwork for FMLA leave was for herself or a family member.

41. Locke explained she requested the paperwork in case she needed it in the future for her mental health.

42. Coffey asked Locke why she used PTO from January 14 through 16, 2022, and Locke replied she was experiencing mental health issues because of her depression.

43. After learning Locke used PTO for her depression, Coffey told Locke "that qualified for FMLA," and Locke would need to get a note from her doctor clearing Locke to return to work and approval from Human Resources before returning to work.

44. Locke never requested FMLA leave.

5

Case 3:24-cv-01085    Document 1    Filed 09/10/24    Page 5 of 10 PageID #: 5

45. Even so, Coffey instructed Locke to complete paperwork for FMLA leave dating back to the PTO days she took for January 14 through 16, 2022.

46. Again, although Locke had already used the three days of approved PTO, Coffey would not allow Locke to return to work.

47. Adhering to Coffey's directive, Locke did not report to work for her shifts that weekend from January 21 through 23, 2022.

48. Locke did not have a primary care physician at the time. As a result, finding a physician to clear her to return to work was difficult.

49. Locke could not obtain a doctor's note.

50. Locke did not report for her shifts on January 28 through 30, 2022 or February 4 through 6, 2022.

51. During this time, Locke constantly called Coffey requesting permission to return to work.

52. Coffey refused to approve Locke's return to work without medical clearance from a doctor.

53. On February 10, 2022, Locke spoke with Defendant Employer's onsite Certified Physician Assistant, Raechel Keiper.

54. Keiper advised Locke she was comfortable with Locke returning to work without any restriction.

55. Keiper did not understand why Locke needed a doctor's approval to return to work.

56. Keiper called Human Resources and told Coffey she was comfortable with Locke returning to work without any restrictions.

57. Coffey approved Locke to return to work but told Locke she would still need to complete paperwork for FMLA leave for the missed days of work or Locke would accrue attendance points despite Defendant Employer's onsite clinic clearing Locke to return to work.

58. On February 11, 2022, Locke returned to work.

59. Locke continued to perform her job.

60. On February 23, 2022, Defendant Employer's Human Resources Department received a notice that Locke had not completed her request for FMLA.

61. On February 28, 2022, Locke had still been unable to complete the paperwork for FMLA because she could not obtain a doctor's note.

62. On March 4, 2022, Defendant Employer assessed her attendance points for every shift Locke missed.

63. Then, Defendant Employer discharged Locke.

64. Locke's Separation Notice states Defendant Employer discharged Locke for "Policy Violation – Attendance."

65. Defendant Employer's attendance policy provides that an employee who has attendance incidents will accumulate points.

66. Defendant Employer does not count as attendance occurrences absences permitted by, among other laws, the FMLA.

67. Employees considered disabled under the ADA may be eligible for attendance occurrence adjustments.

68. Although Defendant Employer's Attendance Policy makes it clear that employees considered to be disabled under the ADA may be eligible for attendance occurrence adjustments, Defendant Employer did not afford Locke this benefit.

69. Defendant Employer discharged Locke despite Locke's ability to perform her job.

70. Defendant Employer discharged Locke because of her disability, depression.

71. Defendant Employer discharged Locke because it regarded Locke as disabled.

72. Defendant Employer discharged Locke because Locke had a record of a disability.

73. The policies and practices complained of in the preceding paragraphs deprived Locke of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability, record of disability, and perceived disability.

74. The unlawful employment practices complained of in the preceding paragraphs above were and are intentional.

75. The unlawful employment practices complained of in the preceding paragraphs above were and are done with malice or with reckless indifference to the federal protected rights of Locke.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in employment practices which discriminate against disabled individuals.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled individuals, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Jasmine Locke by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative

relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, interest, in amounts to be determined at trial.

D. Order Defendant Employer to make whole Jasmine Locke by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 13 - 72 above, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Jasmine Locke by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in Paragraphs 13 - 72 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant Employer to pay Jasmine Locke punitive damages for its malicious and reckless conduct, as described in Paragraphs 13 – 72 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its Complaint.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

*/s/ Faye A. Williams*
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730

faye.williams@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38103
(901) 685-4609

*/s/ Gary Sullivan*
GARY SULLIVAN
Assistant Regional Attorney
AR Bar No. 92051
gary.sullivan@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Little Rock Area Office
820 Louisiana Street, Suite 200
Little Rock, AR 72201
(501) 900-6140

*/s/ Marcerious D. Knox*
MARCERIOUS D. KNOX
Trial Attorney
TN Bar No. 036851
marcerious.knox@eeoc.gov

*/s/ Raquel A. Cato*
RAQUEL A. CATO
Trial Attorney
TN Bar No. 040675
raquel.cato@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN 37228
(615) 736-5784

10